[No. 14903.   Department Two. — October 7, 1893.]

# THE SECURITY LOAN AND TRUST COMPANY, RESPONDENT, *v.* THE WILLAMETTE STEAM MILLS L. & M. COMPANY ET AL., APPELLANTS.

LANDLORD AND TENANT—REMOVAL OF TRADE FIXTURES—BUILDING ERECTED BY LUMBER DEALER.—A building erected by a lumber company on ground leased for a lumber yard, for use as a lumber office and a place for its employees to sleep, which rests upon short posts or underpinning on top of sills laid upon the ground, and bridges built across a zanja for the purpose of giving access to the yard, which consist of stringers with planks nailed to them, constitute trade fixtures within the meaning of section 1019 of the Civil Code, and as such are removable by the tenant from the leased premises at any time during the term.

ID.—CONVEYANCE OF LAND TO LESSEE—MORTGAGE—MERGER—ACTION FOR REMOVAL OF FIXTURES—EVIDENCE.—Where the vendee of premises in possession under a contract of sale executed a lease of the premises to the agent of a lumber company, and ordered a conveyance to be made to such agent, who assigned the lease and conveyed the premises to the lumber company, which afterwards reconveyed the premises to the lessor, in an action by a vendee claiming under such lessor to recover damages from the lumber company for the removal of fixtures from the premises, it is competent for the lumber company to prove that the deed of the land to its agent was in effect a mortgage, and that during the entire term the defendant was in possession of the premises, and paid the rent under the lease, for the purpose of showing that there was no merger of the chattel in the realty, or of the leasehold interest in the legal title.

ID.—POSSESSION AS NOTICE OF EQUITIES.—One who purchases land in the possession of a third person has no right to rely on the record title alone in making the purchase, but is bound to look beyond the record title for the purpose of ascertaining what rights and equities, if any, the party in possession has in the premises.

APPEAL from a judgment of the Superior Court of Los Angeles County, and from an order denying a new trial.

The facts are stated in the opinion of the court.

*Sheldon Borden,* for Appellants.

The improvements were trade fixtures. (*Tyler* v. *Decker,* 10 Cal. 436; *Pennybecker* v. *McDougal,* 48 Cal. 160.) "As between landlord and tenant, it is well settled that the latter may remove *fixtures* erected by him for the purposes of trade, ornament, or domestic use." (*Whipley* v. *Dewey,* 8 Cal. 36; *McGreary* v. *Osborne,* 9 Cal. 119; *Merritt* v. *Judd,* 14 Cal. 59; Taylor on Landlord and Tenant, sec. 544, et seq.; *Holmes* v. *Tremper,* 11 Am. Dec. 241, note; *Ombony* v. *Jones,* 19 N. Y. 234; *King* v. *Wilcomb,* 7 Barb. 263.) The acquisition of the title by Russ did not operate as a merger, as Russ and his

principal (the defendant) were in the position of mortgagees and not owners of the fee. (See 1 Jones on Mortgages, sec. 848, and cases cited.) It was the duty of the plaintiff to inquire into the rights of the defendant, and it had no right to rely merely upon the record title. (1 Jones on Mortgages, sec. 872.) The defendant's possession of the land after the deed to Stearns was, under the circumstances, notice of all its rights. (*Pell* v. *McElroy*, 36 Cal. 268, 278; 2 Pomeroy's Equity Jurisprudence, sec. 617; *Bank of Mendocino* v. *Baker*, 82 Cal. 114; *Dreyfus* v. *Hirt*, 82 Cal. 621; *Scheerer* v. *Cuddy*, 85 Cal. 270; *Hyde* v. *Mangan*, 88 Cal. 319.)

*G. E. Harpham,* and *R. H. Knight,* for Respondent.

FITZGERALD, J. — This is an action brought by plaintiff to recover damages alleged to have been sustained by the entry of defendants upon its lot, and forcibly removing therefrom, against its will, and wrongfully converting to their own use a certain house, foundations, and bridges, which it is alleged were erected thereon and attached to the freehold.

Defendants in their answer admit the removal of the property from the plaintiff's lot, but aver their right to do so on the ground that they were trade fixtures erected by the defendant corporation during its occupancy of the premises as tenants under a lease from plaintiff's grantor, and that such removal was made before the termination of its tenancy thereunder.

The case was tried by the court without a jury, and upon the issues thus joined judgment was rendered in favor of plaintiff and against the defendant corporation alone, from which judgment and the order denying its motion for a new trial it prosecutes this appeal.

The facts are as follows: On April 1, 1884, Jotham Bixby, then owner of the premises in question, entered into a contract in writing to sell and convey the same to Frank L. Stearns for six thousand dollars payable on or before April 1, 1887. Stearns entered into the possession of the premises under this contract, which was never recorded, and on May 6, 1885, he executed to J. A. Russ a lease of the portion in dispute, for a lumber yard, for the term of five years from June 1, 1885. The lease contained

a provision "that the balance of the land from Chavez Street shall be used in common," and it was upon this latter portion of the premises that the house referred to was situated. The lease was duly acknowledged and recorded January 11, 1887, and on February 25, 1889, it was assigned by Russ to his principal, the defendant corporation, for whom it appears he acted as agent in the execution thereof; that in October, 1885, the building was erected upon the suggestion of the lessor by the defendant corporation on that part of the premises reserved in the lease for the common use of the parties, for office purposes, and was used by it as such in its business as a lumber dealer for the sale of lumber and the transaction of its business in connection with its yard and not otherwise, and that the said bridges were built to give access thereto.

On the contract of sale from Bixby to Stearns of the premises in question are the following indorsements: "Deed made to J. A. Russ at request of Stearns for within described property. Deed dated March 6, '87, and delivered April 1, 1887." This deed was recorded April 2, 1887. On March 3, 1888, Russ conveyed the premises to the defendant corporation. On April 20, 1888, the defendant corporation conveyed the premises to George L. and Frank L. Stearns. On January 6, 1890, George L. Stearns and Company conveyed the premises to Frank L. Stearns and Mrs. Snyder, and on March 1, 1890, George L. and Frank L. Stearns, Mrs. E. M. Snyder, and Stearns Manufacturing Company conveyed the same to plaintiff. That the defendant corporation was in the actual possession of the premises as tenant from the commencement of the lease up to the time of the removal of said property, and that it paid the rent therefor according to the terms of the lease up to June 1, 1890; that in 1887 it paid upon the lessor's demand an additional rent of fifty dollars per month for the use of all that part of the land reserved by the terms of the lease to be used in common, and upon which the said building was erected, which rent was paid up to the date of the expiration of the lease, and that the property in controversy was removed by it therefrom prior to that time, and that during the whole of the term of the lease the defendant corporation was in the open, notorious, and exclusive possession of the leased premises.

Upon the facts stated the important question arises whether the building and bridges were erected by the defendant for the purposes of trade and were so used, or intended to be used by it in connection with and as accessary to carrying on its business as a lumber dealer on the demised premises. If so, then they were trade fixtures within the meaning of section 1019 of the Civil Code, and as such were removable by the tenant from the leased premises at any time during the continuance of its term, unless they were so physically annexed to the freehold that their removal could not be affected without injury to the premises, or that they by the manner in which they were affixed had become an integral part thereof.

It is expressly stated in the lease that the premises were leased as a lumber yard, and the evidence shows that they were used as such during the term for which they were leased, and that the building was erected on that part of the land reserved by the terms of the lease to be used in common, with the knowledge and consent of the lessor, as an office for the purpose of carrying on its business as a lumber dealer; that the bridges were built to give access to the premises, and that they were so used from their erection up to the time of their removal.

As to the character of the building and bridges, and the manner and purpose of their erection, Stearns, the original lessor and plaintiff's grantor, testified on behalf of plaintiff as follows: "The character of the building was one and a-half story, good cornice and shingle roof, grate and fire-place and chimney in it, well put up and sealed inside. I don't think the chimney extended to the ground. I think there was blocking under the chimney and studding. The building was built upon the land in the ordinary way — sills laid upon the ground and short posts or underpinning on top of them upon which the building rested.

"The bridges and foundations that were torn out were stringers across the zanja and plank nailed on them. I don't think the removal of the building injured the lot any, except by depriving it of the building.

"I know the purpose for which the building was erected. It was erected for a lumber office and a place to sleep, and the like of that; two or three of Mr. Russ' men who worked in

the lumber yard slept there. It was so used from the time it was built up to the time it was removed."

We think from this and other evidence upon the subject that it is conclusively shown that the building and bridges were trade fixtures within the meaning of the statute, and as such were removable by the defendant during its term unless the character with which they were originally impressed was changed by their merger in the realty, by virtue of the deed from Bixby to Russ conveying the leased premises. And such a result would inevitably follow if during such time the ownership of the fee and of the personalty were united in Russ or his principal, the corporate defendant. In other words, the merger of personal property of this character in the realty, where nothing appears to show a contrary intention, necessarily results from the unity of title to the personal and real property. Defendant, for the purpose of showing there was no merger of the chattel in the realty, or of the leasehold interest in the legal title, introduced testimony tending to show that the corporate defendant did not acquire the ownership of the fee from Bixby; that the deed was in effect a mortgage executed by him to Russ (who acted as agent in the matter for the corporate defendant), at the request of Stearns, the lessor, to secure to the defendant corporation the payment of the balance of the purchase-money due on the land, and advanced and paid by it to Bixby at the instance and request of and for the benefit of Stearns upon an agreement that when the money so advanced was repaid to it by Stearns, it would execute to him a conveyance of the premises; that afterwards Stearns repaid the money, and it conveyed the land to him and George L. Stearns, in pursuance of the agreement, and thereby discharged the mortgage; that during the entire term it was in the actual possession of the premises as tenant under the lease from Stearns, and paid the rent therefor according to the terms thereof.

This testimony was, on motion of plaintiff, stricken out by the court on the ground of want of notice on the part of plaintiff as to the real character of the various deeds and transfers as shown by this testimony, and that the defendant was bound by the record evidence of title. This ruling, which was excepted to, was clearly erroneous for the reason that the corporate de-

fendant was in the actual possession and quiet enjoyment of the premises under the lease, and paying rent therefor according to its terms at and prior to the time they were conveyed by Stearns to plaintiff, and that it continued in the occupancy thereof until the expiration of the lease.   This possession was sufficient to put plaintiff on inquiry, and if the inquiry had been made by plaintiff it could easily have ascertained that the relation of landlord and tenant existing between Stearns and the defendant corporation continued without interruption up to the date of his conveyance of the premises to plaintiff; that it was in the actual possession thereof as tenant during the whole of the leased term, and that it paid the rent therefor during that time according to the terms thereof; that the corporate defendant held the legal title merely as security for money loaned by it to its landlord, and that its subsequent conveyance of the premises to the landlord was by way of discharging the mortgage; that the title to the trade fixtures was preserved separate and distinct from the title to the land, and that their character as such was never merged in the realty; that when the conveyance was made by the corporate defendant to Stearns no reservation was made as to the trade fixtures in the deed, because it was known and understood by all parties that they were personalty, and for that reason no mention of them in the deed was necessary; that Russ acted during all the times mentioned for and on behalf of the corporate defendant as its agent; that the nature of all of the transactions referred to, and which were consummated before the sale of the premises to the plaintiff were perfectly understood by Stearns, as they were made upon suggestions emanating from him and in his own interest.   It therefore follows that plaintiff had no right to rely on the record title alone in making the purchase, but that it was its duty, from the knowledge which it had of the defendant's possession, to act upon the inquiry suggested thereby, and to look beyond the record title for the purpose of ascertaining what rights and equities, if any, the corporate defendant had in the premises; and as it failed to do this the corporate defendant's possession thereof charged it with full knowledge of the true character of the transactions referred to, and of the rights and equities arising therefrom and existing between the

landlord and tenant at the time of plaintiff's purchase of the land, and he took it subject to them.

This testimony was perfectly competent for the purpose for which it was introduced, and, as the court erred in striking it out, it follows that the judgment and order appealed from should be reversed, and it is so ordered.

DE HAVEN, J., and McFARLAND, J., concurred.