[Civ. No. 121. First Appellate District.—January 3, 1906.]

## O. L. SHAFTER ESTATE COMPANY, Appellant, v. W. ALVORD et al., Respondents.

LEASE—LICENSE—HUNTING AND FISHING.—An instrument in writing granting the use of and the right to occupy the lands described therein for fishing, hunting and shooting for a fixed term, and which is referred to as a lease in the body of the instrument, is a lease and not a mere license, and creates the relation of landlord and tenant between the parties thereto.

ID.—REMOVAL OF BUILDINGS DURING TERM.—Under section 1019 of the Civil Code, the tenant under such lease has the right, prior to the expiration of the term, to remove a house and barn erected by him on the leased premises for the purposes of, and to enable him to hunt and fish thereon, provided such removal could be effected without injury to the premises.

ID.—EVIDENCE OF CHARACTER OF HOUSE.—In an action by the landlord to recover damages for the removal of such house and barn, the refusal to allow a witness to testify whether the house when completed was a substantial structure is not error, if the witness has already described the house in detail and its manner of construction.

APPEAL from a judgment of the Superior Court of Marin County, and from an order refusing a new trial. F. M. Angellotti, Judge.

The facts are stated in the opinion of the court.

M. B. Kellogg, and A. E. Shaw, for Appellant.

Bishop, Wheeler & Hoefler, for Respondents.

COOPER, J.—This action was brought to recover damages for the removal of a house and barn upon an alleged breach of a covenant to maintain fixtures. The trial court granted a nonsuit, and judgment was entered for defendants. This appeal is from the judgment. The facts are substantially as follows: On the 19th of August, 1890, the plaintiff, by an instrument in writing, let to defendants the rights of fishing, hunting and shooting upon the lands described in the instrument for the term of five years from the said date, with the privilege to defendants of renewal for another five years,

which renewal was made, extending the original agreement, and the rights thereunder to August 19, 1900. As a consideration for the privileges granted, the defendants agreed to protect the property from fire; keep off trespassers; to prosecute all trespassers at their own expense; to hold inviolable the rights of other tenants; not to destroy fences, and in case of injury thereto to repair the same; to keep the gates closed; to maintain the fixtures, and protect the trees, shrubbery, and growing crops. The defendants entered upon the property under the contract, and, for their own uses and purposes, erected a small house and barn. The house was occupied by their gamekeeper, and they used the rooms in the house for sleeping purposes when staying over night on the premises. The barn was used for keeping the horse of the gamekeeper and the horses of the defendants when desired by them. The house was a substantial structure resting upon the ground. When the house was being built, the ground was removed in places and the mudsills let in, or partly in, the soil. The house and barn were structures necessary to the full enjoyment by defendants of the privileges granted, and were erected by defendants at their own expense and for their own uses and purposes. Prior to the termination of the agreement, the house and barn were removed by defendants without injury to the premises. The question is as to whether the house and barn belonged to plaintiff as fixtures at the time of their removal.

Appellant contends that the instrument was not a lease, but a mere license, and that therefore the relation of landlord and tenant did not exist between plaintiff and defendants. We are of opinion that the instrument was a lease, and that the relation of landlord and tenant was created by it. It granted to the defendants the use of and the right to occupy the lands therein described for certain named purposes. The term was fixed in the instrument. The defendants entered thereunder and for the purposes therein specified. The entry was by permission of the owner. The conditions and covenants defining the rights of the parties were set forth in the instrument. The last clause is as follows: "It is further mutually understood and agreed that any failure on the part of the party of the second part to perform any of the agreements expressed herein shall work a forfeiture of this lease."

In the complaint the plaintiff alleges that it "entered into a certain indenture of lease," and that "at the time of the commission of said acts last aforesaid said defendants were tenants of said plaintiff under and by virtue of said lease and for the purposes therein mentioned." In *Security. etc. Co.* v. *Willamette etc. Co.,* 99 Cal. 636, [34 Pac. 321], the lease was for certain defined purposes, and not exclusive, yet it was held that the relation of landlord and tenant existed. In *Kellogg* v. *King,* 114 Cal. 378, [55 Am. St. Rep. 74, 46 Pac. 166], it was held that the lessee of the hunting privileges on certain lands could maintain ejectment as to those lands, and that the reservation of the right of pasturage in the lessors "in no way affects or militates against the exclusiveness of plaintiff's rights in the premises as a hunting preserve, which the lease clearly contemplates." In *Conrad* v. *Saginaw Min. Co.,* 54 Mich. 249, [52 Am. Rep. 817, 20 N. W. 39], it was held that an instrument granting to defendant the right to enter upon lands and prospect, mine and quarry on the same for fifteen years, created the relation of landlord and tenant. It therefore follows that the rights and liabilities of plaintiff and defendants as to the privileges granted were those of landlord and tenant.

The next question is as to whether the defendants had the right to remove the house and barn under section 1019 of the Civil Code, which provides: "A tenant may remove from the demised premises any time during the continuance of his term anything affixed thereto for the purpose of trade, manufacture, ornament or domestic use, if the removal can be effected without injury to the premises, unless the thing has, by the manner in which it is affixed, become an integral part of the premises." The above section is broad in its terms, and includes everything that the tenant may affix to the premises for the purposes therein designated. Whatever the rule may have been at common law the modern decisions, both in this country and in England, in regard to the removal of fixtures, as between landlord and tenant, most liberally construe the right in favor of the tenant. In all cases, where the improvements are erected at the expense of the tenant for his own uses and purposes under the lease, policy and justice demand that the tenant should be allowed, before the expiration of the lease, to remove them, provided that the removal does

not injure the freehold nor operate to the injury of the inheritance. The landlord pays nothing for the fixtures, and there would be no justice in allowing him to take them from the tenant without consideration. If the lessee pays the hire of the property, or performs the other covenants of his lease, and returns it in as good a condition as he found it, the landlord should be satisfied. In *Wiggins Ferry Co.* v. *Ohio etc. Ry. Co.*, 142 U. S. 415, [12 Sup. Ct. 194], the court said: "As between landlord and tenant, or one in temporary possession of lands under any agreement whatever for the use of the same, the law is extremely indulgent to the latter with respect to the fixtures annexed for a purpose connected with such temporary possession." If we apply the above elementary principles to the case at bar the judgment must be affirmed. The defendants leased the premises for the purpose of hunting and fishing thereon. Whether we call hunting and fishing a business or trade makes no difference in principle. The house and barn were erected by defendants for the purposes of, and to enable them to, hunt and fish upon the premises. The principle here decided was applied in *Van Ness* v. *Pacard*, 2 Pet. 137, in a case where a tenant, with the view of carrying on his business as a dairyman, and for a residence of his family and servants engaged in that business, erected a building larger and more valuable than the building in controversy here. It was held that the size of the building or the materials of which it was built were unimportant, and that the tenant had the right to remove it. In *Security etc. Co.* v. *Willamette etc. Co.*, *supra*, it was held that a building erected by a tenant as an office and place for its employees to sleep was a trade fixture and that it could be removed by the tenant before the expiration of his lease. In *McDonough* v. *Starbird*, 105 Cal. 15, [38 Pac. 510], it was held that an office, erected by a tenant of a lumber-yard and resting upon mudsills, might be removed by the tenant as a trade fixture during his term. In *Mears* v. *Callender*, [1901] L. R. Ch. D. 388, it was held that a conservatory erected for the purposes of trade, as by a flower vender, is removable; and so as to a building erected on a vacant lot for the purpose of a livery-stable (*Firth* v. *Rowe*, 53 N. J. Eq. 520, [32 Atl. 1064]); and a building erected to cover or to contain machinery (*Carr* v. *Georgia R. R. Co.*, 74 Ga. 74); and a building erected for the

purpose of a saloon (*Lewis* v. *Ocean Nav. etc. Co.,* 125 N. Y. 341, [26 N. E. 301]).

It was not error to sustain defendants' objection to the plaintiff's question asked of the witness Howe, as to whether the house when completed was a substantial structure. The witness described the house in detail and its manner of construction, and the court could tell as to whether or not it was substantial; besides we have treated it as a substantial structure in the discussion of the case.

The judgment and order are affirmed.

Harrison, P. J., and Hall, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on February 28, 1906.