AUSTIN W. DICKERMAN ET UX. *v.* TOWN OF PITTSFORD ET AL.

(80 A2d 529)

February Term, 1951.

Present: SHERBURNE, C. J., JEFFORDS, CLEARY, ADAMS and BLACKMER, JJ.

Opinion Filed May 1, 1951.

*Hanford G. Davis* for the plaintiffs.

*Bloomer & Bloomer* for the defendants.

BLACKMER, J.   This is a bill in chancery to quiet title to a parcel of land and a schoolhouse erected thereon, to determine the ownership of the same and decree title to the lawful owner or owners.   The defendants Town and Town School District answered.   The case was heard on oral evidence by the court of chancery.

These facts appear from the chancellor's findings of fact and from

admissions in the briefs. In 1866 Thomas conveyed a part of his farm to the Fifth School District of the Town of Pittsford. The habendum in the deed is "To have and to hold the same from the date hereof for and during the time or period that the said School District shall use and occupy the said grounds for school purposes, and as a school house, but if ever said district shall move the school house or give up the said land for the purpose of a school house, this deed or lease shall terminate, and the land revert back to me, the said Thomas, or my heirs or assigns." The deed was duly recorded. It was the intent of the parties that any school building erected on the premises should not become a part of the realty but should be removable therefrom as a chattel. The plaintiffs are successors in title to Thomas. The defendant School District is the successor in title and corporate function to the Fifth School District. A schoolhouse was erected in 1886 by the school authority. It was used without interruption for school purposes until February 1942. Since that date it has not been used for school purposes. Prior to the town meeting of the Town of Pittsford in March 1949 the plaintiffs endeavored to purchase the school property from the school directors, but the latter refused to sell the subject property. Thereafter the plaintiffs were instrumental in causing the circulation of a petition to have included in the warning for the town meeting an article authorizing a sale of the school property. More than a reasonable period of time has elapsed since the closing of the schoolhouse in February to the time this action was instituted (July 27, 1949). The School District has given up said land for the purpose of a schoolhouse.

The decree awarded the land to the plaintiffs and in paragraph three thereof the personal property on the land "consisting principally of the school building erected thereon" to the defendants Town and Town School District, which were authorized to remove the building from the premises within a certain time which has now passed. The plaintiffs excepted to the decree, and make claim that the part which decrees the schoolhouse to the Town and Town School District is not supported by the findings.

The Town of Pittsford is a corporate entity separate and distinct from the Town School District of the Town of Pittsford. *Farmer* v. *Haley et al,* 100 Vt 75, 78, 135 A 12; *North Troy School District* v. *Town of Troy,* 80 Vt 16, 32, 66 A 1033. It appears, then, that the School District of the Town of Pittsford is the only defendant party interested. No point was made of this below or here; since it

is consistent with the positions of the respective parties, we shall treat the case as if the School District were the only defendant so far as the schoolhouse is concerned.

■ The original deed from Thomas created a determinable fee, and the right of reverter remaining in Thomas was alienable. *Collette* v. *Town of Charlotte,* 114 Vt 357, 360, 45 A2d 203. The principal question presented to us is whether, on determination of the School District's interest in the land, the schoolhouse passed to the plaintiffs as a fixture.

"The general rule of the common law certainly is that whatever is once annexed to the freehold becomes part of it, and cannot afterwards be removed, except by him who is entitled to the inheritance. The rule, however, never was, at least as far back as we can trace into the books, inflexible and without exception. It was construed most strictly between executor and heir in favor of the latter; more liberally between tenants for life or in tail, and remainderman or reversioner, in favor of the former; and with much greater latitude between landlord and tenant in favor of the tenant. But an exception of a much broader cast, and whose origin may be traced almost as high as the rule itself, is of fixtures erected for the purpose of trade. Upon principles of public policy, and to encourage trade and manufacture, fixtures which were erected to carry on such business were allowed to be removed by the tenant during his term, and were deemed personalty for many other purposes." Mr. Justice Story, in *Van Ness* v. *Pacard,* 2 Pet. 137, 7 L ed 374. Much of the law relating to buildings as trade fixtures is based more or less directly on *Van Ness* v. *Pacard.* Anno. 107 ALR 1154.

■ The general rule is that a building may be a trade fixture. 22 Am. Jur. Fixtures § 66; 40 CJS Fixtures § 38, note 98. This Court recognized the rule in *Snow* v. *Smith et al,* 86 Vt 58, 60, 83 A 269. It was there said that since the buildings were placed on the rented premises to advance the business for which the premises were leased, they must be held to be trade fixtures. Whether a building is or is not a trade fixture is not dependent on its size, foundation, method of construction, etc., but the sole question is whether the building is designed for purposes of trade, and if so designed it is a trade fixture and is removable. 22 Am Jur, Fixtures, § 66; *Snow* v. *Smith et al, supra,* 60.

A simple reference to the habendum in the Thomas deed is sufficient to show that the "business" (of which more hereafter)

which was carried on in or upon the premises was that of education; the use of the land was by the terms of the deed dedicated to that purpose. It is apparent that the schoolhouse was placed on the land to advance the business of education. The schoolhouse was designed for the purpose of education. It would be difficult, if not impossible, to confuse a schoolhouse used for educational purposes with a building intended for use with the operation of the farm from which the Thomas grant was carved. The plaintiffs are chargeable with knowledge of the contents of the habendum, the deed having been duly recorded. And it sufficiently appears from the findings that the educational use of the schoolhouse was patent to anyone who looked. It is not within reason that the plaintiffs, or any of their predecessors in title, could have been misled.

*American Steel & Iron Co.* v. *Taft et al,* 109 Vt 469, 199 A 261, is much in point. There, at p. 472, *Snow* v. *Smith, supra,* was cited with express approval. At pp. 471-473 the holding was that railroad rails, rail accessories and ties are trade fixtures or in the nature of trade fixtures, and as such are removable when the railroad ceases operations, or within a reasonable time after the owner of the reversion demands their removal. In the course of the opinion it was said, *American Steel & Iron Co.* v. *Taft, supra,* 472, that tracks, railroad structures and other railroad equipment do not become a part of the realty and may be removed by the railroad company or its assigns on abandonment of the right of way, or within a reasonable time thereafter. The word "structure" by definition includes a building, a building of some size, an edifice. Webster's New International Dictionary.

In the American Steel case, supra, the interest in land to which the property was affixed was a railroad right of way, or as often called, a railroad easement. Here the interest is a determinable fee. This need give us no pause; in fact it is an asset to our conclusion. It is not necessary in this case to hold that a railroad right of way is a determinable fee. It is sufficient for the present purpose to note that there is a striking analogy. *Jackson* v. *Rutland & Burlington R. R. Co.,* 25 Vt 150, 159; *Troy & Burlington R. R. Co.* v. *Potter,* 42 Vt 265, 274; Anno. 155 ALR 392-394.

The statement in *Paine* v. *McDowell & Tucker,* 71 Vt 28, 32, 41 A 1042, that the doctrine of trade fixtures applies only between landlord and tenant is at variance with the books, and has been repudiated by the holding in *American Steel & Iron Co.* v. *Taft, supra.*

It is, however, the truth that the rules as to fixtures have been evolved largely in cases involving estates for years. Restatement of the Law of Property, § 122, comment a.

We are not disposed to quibble over a narrow definition of "trade" or "business" when the circumstances call for a broad and equitable application of an underlying principle; it is not necessary so to do, on authority. The general rule is that buildings erected on land for agricultural purposes are trade fixtures. 22 Am Jur Fixtures, § 66, p. 785; Anno. 107 ALR 1164. This extension of the rule finds support in cases in this jurisdiction. See *Preston* v. *Briggs,* 16 Vt 124, 129, (a barn) and *Leland* v. *Gassett,* 17 Vt 403, 411, where it was said "perhaps the observation of the Court in *Van Ness* v. *Pacard, supra,* would extend this exception to buildings erected for agricultural purposes."

In *Witenmeyer* v. *Board of Education,* 10 Ohio Cir Ct R 119, 6 Ohio Cir Dec 258, 2 Ohio N. P. 555, it was held that a school building erected upon leased premises by a lessee board of education, and used exclusively for school purposes was governed by the same rule as that applying to "trade fixtures" and therefore to be removable by the lessee during the term, or within a reasonable time after the expiration thereof, although the lease contained no agreement to that effect. Another persuasive case is *O. L. Shafter Estate Co.* v. *Alvord,* 2 Cal. App. 602, 84 P. 279, 280. There the lessees of land for a game preserve erected a small but substantial house and barn for the gamekeeper and his horses, which buildings were used by the lessees when staying overnight. It was held that the buildings were removable under a statute pertaining to structures erected for the purpose of "trade", etc. The Court said: "The defendants (lessees) leased the premises for the purpose of hunting and fishing thereon. Whether we call hunting and fishing a business or trade makes no difference in principle. The house and barn were erected by the defendants for the purpose of and to enable them to hunt and fish upon the premises. The principle here decided was applied in *Van Ness* v. *Pacard*." (Supra.)

The conclusion is, and almost inevitably, that when a schoolhouse is erected by a school district on a determinable fee granted it for school purposes, the school district may remove such schoolhouse during the life of the fee, or within a reasonable time after its determination.

The rule is just. The terminable character of the defendant's

estate indicates that the schoolhouse was not intended to be a permanent addition to the real estate, but to serve for educational purposes only, and that until time and circumstances required a change. Neither the plaintiffs nor their predecessors in title contributed anything to the schoolhouse; the plaintiffs should not be enriched at the expense of the School District simply because their right of reverter in the land has become operative.

The plaintiffs insist that the defendant's right of removal has ceased to exist, pointing to the chancellor's finding "More than a reasonable period of time has elapsed since the closing of the schoolhouse in February 1942 to the time this action was instituted" and citing *Preston* v. *Briggs, supra,* 129, to the proposition that a tenant must remove a building erected by him previous to the expiration of his term, or at least within a reasonable time thereafter.

With regard to the quoted finding, the plaintiffs take it out of its context. It is preceded by subordinate findings having to do with whether the fee had been determined, which seems to have been the chief, if not the only, issue debated on trial. It is immediately followed by a finding that the School District has given up the land for the purpose of a schoolhouse and made prayer that it be permitted to remove the school building. The context of this finding relating to reasonable time, its juxtaposition to the ultimate finding that the land was given up, the conspicuous lack of mention that the schoolhouse was given up coupled with the notation of a request for its removal, all lead to this construction : The finding means that the time element is a factor supporting the conclusion that the fee was determined; it was not intended to apply to the problem of the building.

We paraphrase the position taken in *American Steel & Iron Co.* v. *Taft et al, supra,* 473 : The defendant was not bound to remove the schoolhouse within any specified time; so long as no claim of title to it was made by the plaintiffs, no objection made to the building remaining on the land, no notice given to remove it, and no act done by the plaintiffs which would bring home to the defendant notice that the plaintiffs intended to assert ownership over the schoolhouse, the defendant had the right to assume that its status quo remained unchanged. As late as March 1949 the plaintiffs treated the school building as the property of the School District. The plaintiffs' bill was dated, served and filed July 27, 1949. The record is silent as to any happenings during the four month interval. It is fairly inferable from these facts that a reasonable

time to remove the schoolhouse had not elapsed, and in support of the decree we assume that the chancellor so inferred.

*Decree modified by striking therefrom as surplusage all reference to the Town of Pittsford in paragraph three thereof, and, as modified, decree affirmed. Cause remanded with direction that a new time be fixed during which the Town School District of the Town of Pittsford may remove its schoolhouse from the premises.*