**INDEPENDENT SCHOOL DISTRICT NO. 1 OF HARPER COUNTY, State of Oklahoma, Appellee,**

v.

**George Roy LENZ, Jr., Appellant.**

**No. 51819.**

Court of Appeals of Oklahoma, Division No. 2.

April 3, 1979.

Rehearing Denied April 23, 1979.

Released for Publication By Order of Court of Appeals May 17, 1979.

G. W. Armor, Armor & Gottsch, Laverne, for appellee,

M. Marcus Holcomb, Holcomb, Holcomb & Harkins, Buffalo, for appellant.

BRIGHTMIRE, Judge.

Years ago, there came into being on some Harper County land a large brick schoolhouse and two frame buildings known as the Rosston School. By and by the facilities were abandoned after the Rosston School District was annexed to the Laverne School District. The Rosston improvements were built with taxpayers' money on land granted subject to reversion of title to grantors "at any time it ceases to be used for school or educational purposes." The school district brought this action in 1977 against George Lenz, grantors' successor in title, asking for a "declaratory judgment" establishing its right to sell the abandoned school buildings and authorizing their removal. In a post-hearing decision, the trial court held that the Rosston School District was entitled to possession of the buildings and restrained Lenz from interferring with their sale and removal. Lenz appeals saying the judgment was wrong because the school district waited too long and lost its right to remove the buildings.

I

The operative facts are without significant dispute. The school ceased use of the buildings for school purposes in 1970. And, although they tried early to give the improvements to the town of Rosston—a gift the town declined to accept because it could not afford to keep them up—it did little or nothing for the next several years to rid the land of the buildings. In 1974, at the request of the town of Rosston, Lenz executed a five-year written lease of the premises to the town which contained this provision:

> "[I]n the event the second party [Town of Rosston] should during the term hereof remove all of its buildings from the above premises, then this lease to immediately terminate upon completion of said removal."

Lenz said he executed this lease because town officials said they had to have it be-

fore the school board would give them the buildings, and it was not to be effective unless the town acquired the buildings. He concluded, however, that since the school board did not sell Rosston the buildings they were his—a conclusion exceedingly difficult to reconcile with another of Lenz's statements that he has claimed ownership of the buildings "since they put them on the tax rolls" in 1973.

## II

Lenz divides his argument into four separate propositions, but essentially his contention is that although the school district owned and had a right to remove the buildings upon vacating the land it was bound to do so within two years, or in any event within a reasonable time, and the right was lost by waiting seven years before trying to clear the land.

Shortly after Rosston abandoned the buildings, Lenz began exploring the possibility of the town taking over the buildings and using them for some community purpose. In 1974, he executed a five-year lease in favor of Rosston for one dollar. Not long after this, the county assessor put the land on the tax rolls, and Lenz had to begin paying taxes on it. The town never used the property, and through the years vandals broke windows and doors, ripped out wiring, took electrical equipment, and stole the blackboards. In 1976, the school district decided to sell the buildings to a buyer who would remove them and immediately encountered the opposition of Lenz.

■ What are the legal rights of the parties under these circumstances? The school buildings built by the school district did not, the parties agree, become part of the realty. *Derieg v. Board of Education*, 202 Okl. 577, 216 P.2d 307 (1950). But, once the buildings are abandoned what is supposed to happen? Has the school board the right to keep the land encumbered with its property forever or at least indefinitely? Surely not, because if it did, the reversion

rights of the grantor would be subordinated to the whim of a school board—an impairment fraught with potential destruction of the landowner's property rights. While it has been decided that the school board may remove the buildings,[1] there is no decision in this state and very little elsewhere deciding when this has to be done.

Where the removal issue has been raised, the courts have applied the same rule that governs the right of a tenant to remove improvements on leased land—namely, within a reasonable time.[2] And, what is a reasonable time? That, of course, depends on the circumstances. An eight year delay was held to be unreasonable in *Collette v. Town of Charlotte*, 114 Vt. 357, 45 A.2d 203 (1946). One year was considered reasonable in *May v. Board of Education*, 12 Ohio App. 456 (1920). Four years was beyond a reasonable time according to *Burdette v. Jones*, Ohio Com.Pl., 34 Ohio Op. 488, 72 N.E.2d 152 (1947). But, where reversioner treated the school building as property of the school board for seven years after the reversion and began to claim the improvement only four months before filing a quiet title suit, the court in *Dickerman v. Pittsford*, 116 Vt. 563, 80 A.2d 529 (1951) held that a reasonable time had not yet elapsed.

## III

■ No reason comes to mind why the general rule of reasonableness should not apply to school districts in reversion cases in this state. When applied to the facts here, however, we are not persuaded it has the effect of requiring a reversal, as Lenz contends, because under the admitted circumstances the delay in removing the buildings was not without reason. As a matter of fact, we are drawn to the conclusion that Lenz never has wanted nor does he now want the buildings removed. There is no evidence that Lenz ever once asked the school board to remove the buildings; he never attempted to buy them; he never did anything inconsistent with a personal desire

---

1. *Spencer v. Board of Education*, 206 Okl. 657, 246 P.2d 333 (1952).

2. *Hayward v. School Dist. No. 9*, 139 Mich. 539, 102 N.W. 999 (1905).

that the school district leave the buildings alone. On the contrary, all his efforts were aimed at trying to get the town of Rosston to acquire the buildings for the purpose of developing them for some type of community activity under town sponsorship. In furtherance of this objective, he had leased the land to the municipality in 1974 for a nominal rent of one dollar a year—a lease that is still in effect. "I was doing it [giving the lease]," said Lenz quite frankly, "for a place for my kids to go to be right honest about it, properly sponsored." This evidence places Lenz in the untenable position of invoking his years of effort to keep the buildings intact as a reason for extinguishing the school board's interest in the property.

### IV

We hold the conduct of Lenz requires rejection of the conclusion that the school board's delay or failure to remove the buildings was unreasonable.

Affirmed.

NEPTUNE, J., concurs.

BACON, P. J., concurs in result.