ARAD JACKSON v. E. P. WALTON, *Trustee of* R. F. ABBOTT.

*Reclaiming personal property.   Trustee process.*

The right of the owner of personal property to reclaim it, if he can identify it, does not exist when the property has been annexed to another persons freehold and become a part of the realty.

The principal defendant quarried, dressed, sold and delivered to the trustee a quantity of granite and laid it down for a permanent walk on the trustee's premises. He obtained the stone without right from the quarry of a third person, who, after the walk was laid, claimed them as his property. *Held,* that the property in the stone was in the trustee after they were laid into a walk, and that the trustee was indebted to the principal defendant, and liable as his trustee, at least for the increased value of the stone which was produced by their being quarried, dressed and delivered.

TRUSTEE PROCESS.   The trustee disclosed as follows:

" Sometime in the year 1852, I said to Mr. R. F. Abbott that I " wanted some stone for a front walk.   He replied that he could " probably procure or furnish them.·   In the month of August, " 1853, Mr. Bradish served a trustee writ upon me as indebted " to said Abbott.   I had not then received the stone of any one. " On the afternoon of the same day, or the forenoon of the next, " (I am not certain which,) Mr. Moses Peck said to me that he " had some granite stone for a walk to deliver me as the property " of Mr. Drury, who had employed him to bring them ; and that he " should deliver them only as the property of Mr. Drury.   I said " to him he might so deliver them, and he did so.   Mr. Abbott " laid the stone for me, and received his pay therefor by an order " on E. P. Walton & Son."

Commissioners were appointed, who reported that the trustee was indebted to the principal defendant in the sum of sixty dollars, and chargeable for that sum ; subject to the opinion of the court upon the following facts.

The debt of the trustee is for 114 feet of hewed granite stone, delivered to him by Abbott, on the 3d day of August, 1853, for a walk from his front door to the street, with curb stones at the sides, which were immediately laid down, and have been ever since, and are now used for that purpose.   These stone were taken from a granite quarry owned by Erastus S. Camp, and mostly after March 10, 1853.   Some time previous to that time, Abbott made an arrangement with Alvan Drury to take a lease of this granite

quarry from Camp; Abbott paying or securing the rent, so that Drury was not to pay or be holden for it, in any way, at any time. Abbott then applied to Camp for a lease to Drury; and Camp subsequently executed one in duplicate, but it was never accepted or executed by Drury. The rent, as stipulated in the lease, was $ 35, per year, but it has never been paid. Drury declined to pay it, and the commissioners found that he was not liable for it, and they did not find that either Drury or Abbott had any right to take stone from the quarry till the rent was provided for in some way, which had never been done. The stone were worth in the quarry one cent per foot. In laying them down for a walk at the trustee's house, the space to be occupied by the walk was first dug out and a foundation of rough stones laid, upon which the flat granite stones, three in number, were placed. The face of the flat stones, was upon the same level as the earth surrounding. The curb stones were set in the earth by the side of these flat stones, arising above them four or five inches. For some two feet in width at the side of the curb stones, the soil was raised nearly to the height of the curb stones, which were set in the earth about six or eight inches below the upper surface of the flat stones. The walk was cut and fitted for the place it occupies, but can be removed without doing any damage to the dwelling house of the trustee.

At the time of the service of the writ in this suit Abbott was indebted to Drury. The stone were attached on the plaintiff's writ in this suit, as the property of Abbott, and were then in the charge of the teamster, Moses Peck. Thereupon Abbott requested said Peck to deliver the stone to the trustee as the property of Drury, which the said Peck then did as is narrated in the trustee's disclosure, all the facts stated in which the commissioners found to be true. After this, the attachment of the stones was abandoned and the trustee process relied upon to secure the debt. Drury knew nothing of Abbott's contract with the trustee, and nothing of these stone until the present suit was commenced.

During the hearing before the commissioners, and near its close, Camp notified the trustee, that he claimed said stone as his property. He did this upon learning that Drury denied all liability for the rent of the quarry, Abbott being wholly irresponsible.

Upon the facts so disclosed and reported, the county court,

Jackson *v.* Walton, Tr.

March Term, 1855,—Poland, J. presiding,—adjudged the trustee chargeable for the sum reported. Exceptions by the trustee.

*O. H. Smith* for the trustee.

The ownership of a thing, whether real or personal, carries with it the right to all that the thing produces, and to all that becomes united, attached or interwoven with it, provided only, that its identity be not destroyed. This principal was recognized by the civil law; Wood's Inst. Civ. Law, 92; and in the 5th Henry VII. " after solemn argument on demurrer" was held to be law in England; and has never ceased to be so considered, and is recognized in *Betts et. al.* v. *Lee*, 5 Johns. 348; *Curtis* v. *Groat*, 6 Johns. 169; *Silsbury & Calkins* v. *Mc Coon & Sherman*, 6 Hill 425; *Baker* v. *Wheeler & Martin*, 8 Wend. 505; *Chandler* v. *Edson*, 9 Johns. 362; *Babcock* v. *Gill*, 10 Johns. 287; *Brown* v. *Sax & Kimble*, 7 Cowen 95; *Miller* v. *Humphrey*, 2 Marshall 449; *Burnes* v. *Johnson*, 1 J. J. Marshall 197; 2 Johns Ch. R. 62; *Barron* v. *Cobleigh et al* 11 N. H. 558; *Ryder* v. *Hathaway*, 21 Pick. 298; 2 Black. Com. 404; 2 Kent's Com. 296; 1 Bouv. Inst. 197, 199; Bac. Abr. Trespass, E. 2; 2 Rolle 393, 566.

Walton cannot be adjudged the trustee of Abbott, even if the stone have been attached to the freehold, which we deny, for Camp may maintain trover for their conversion. Abbott could convey no title to Walton as he himself had none. The property still remained in Camp and no tortious act of Abbott or Walton could divest him of it. *Buckmaster* v. *Mower et al.* 21 Vt. 204. See also *Martin* v. *Porter*, 5 M. & W. 351; *Wingate* v. *Smith*, 20 Maine 237.

*Merrill & Willard* for the plaintiff.

The stones became a part of the trustee's realty; and after property has been taken from the owner and converted into real estate, the owner cannot reclaim it. *Silsbury & Calkins* v. *Mc Coon & Sherman*, 6 Hill 425; S. C. 4 Denio 332; *Brown* v. *Sax*, 7 Cow. 95; Bro. Ab. tit. Property, pl. 23. By the civil law a similar rule is prescribed. 2 Kent's Com. 364; Bacon's Ab. Trespass, 580.

The stone in the quarry were worth $1.14, and were, by the labor and skill of Abbott, increased in value so as to be worth $60. This is to be likened to the case of the fine painting on canvass, where the owner of the canvass is not held to be the owner of the painting. The principal part was furnished by Abbott. Camp's part was trivial. 2 Kent's Com. 362.

The opinion of the court was delivered, at the circuit session in September, 1856, by

BENNETT, J. This case comes up on exceptions to the decision of the county court rendering the trustee chargeable. It seems the case must turn upon the question, to whom did Mr. Walton owe this debt? If not to Mr. Abbott, he should not be adjudged chargeable. It is found in the case, that some time in the year 1852, Mr. Walton spoke to Mr. Abbott for the stone, and that he was answered by Mr. Abbott that he, Abbott, could probably furnish them; and it is expressly found by the commissioners that Abbott did deliver the stone to Mr. Walton on the third day of August, 1853, and that he received them and used them for the purposes for which they were designed. These facts are abundant, to show an indebtedness from Walton to Abbott, unless there is enough in the case to control them. It is claimed, however, that this debt belonged to Drury, and not to Abbott. It becomes important to see what the facts are bearing upon this point. It is true, the trustee discloses that one Moses Peck told him he had some stone for a walk to deliver him, as the property of Mr. Drury, who, he said, had employed him to bring them; and that he should only deliver them as the property of Mr. Drury; and the trustee says he told him he might so deliver them, and he did so. But still it is found that Abbott really delivered the stone, and that he in fact requested Peck to deliver the stone to the trustee as the property of Drury, which was done; and that Drury knew nothing of Abbott's contract with the trustee, and nothing about these stone until the present suit was commenced. There is nothing in the case to show that Drury had any interest in the stone, or that Abbott could be regarded in any sense, as acting as the agent of Drury; but the case shows the reverse, and that Abbott quarried out these stone for and on his own account.

Jackson *v.* Walton, Tr.

Upon such a state of facts, no debt can be claimed, as being due from the trustee to Drury. Drury was but a man of straw; and though Abbott caused Peck to act ostensibly in his name, yet it was without any authority, and without any interest in Drury; and what was done was in truth done by Abbott, as the commissioners have found. The disclosure of the trustee simply affirms, that Peck *assumed* to act for Drury in the delivery of the stone; and that the trustee consented that the stone should be delivered and received as the property of Drury. This would not necessarily make them so, as matter of fact.

It is further objected by the trustee, that he should not be *chargeable* as the trustee of Abbott, upon the ground that Abbott quarried these stone from a quarry belonging to one E. S. Camp, without any right, and was a trespasser in so doing; and that consequently, it is said, the trustee is liable to Camp for the value of the stone, and should not be held liable to the principal debtor. But suppose it be conceded that Abbott trespassed upon the rights of Camp in quarrying the stone, and might have been sued in tort by Camp for the injury done him, does it follow that Camp can sue the trustee in assumpsit, or tort and recover the value of the stone? These stone were purchased by Mr. Walton for a walk from his front door to the street, and were used for this purpose; and when these stone had been laid down in the manner detailed in the bill of exceptions, they became a part of the trustee's realty, as much so as if they had been stone for a wall, and had been, not only purchased for that use, but had been actually laid into stone wall upon his farm. Though it may be true that, whatever alteration there may be in the form of property, if the owner can prove the *identity* of the original materials, he may still seize it in its new shape, yet this right only exists so long as the *identity* of the original materials can be established. This principle, however, does not apply to cases where the property, illegally taken, has lost its identity, or has been annexed to the freehold. It then becomes a part of the realty, and its nature is changed. 6 Bacon, Trespass, p 580. See, also, 7 Cowen 95; 6 Hill 425.

Though it might be true, that in an action of trespass against Abbott, the measure of damages might be the value of the stone at the time of the asportation, and in an action of trover, the value

at the time of the conversion, as evidenced by a demand and refusal, even although the value had been increased by the previous tortious acts on the part of the defendant, which might have subjected him to an action; yet it does not necessarily-follow, that the same rule of damages would obtain in a suit against Abbott's vendee. It is to be presumed that Walton bought the stone in good faith, and was not guilty of any intentional wrong upon the rights of Camp, and when the trustee had annexed these stone to his freehold, the title to them would not attach in Camp, but they would belong to the trustee, when they became a part of his realty. The right of property was thereby changed, and, however it might be in a suit against Abbott and upon which we have no occasion to express any opinion, we think Walton could not be held liable to Camp for the increased value of the stone produced by their being quarried, wrought and delivered to the trustee by Abbott.

The amount of hewed stone delivered was 114 feet, and the value of these stone in the quarry, is found to be one cent per foot. If it was to be conceded that, in an action by Abbott against Walton for the value of the stone, Walton would have the right to retain to the amount of the value of the stone in the quarry, upon the ground of his liability to Camp yet this cannot lead to the reversal of the judgment of the county court. The commissioners decided from the disclosure and facts found by them, that Walton was indebted to Abbott in the sum of sixty dollars, and was his trustee in that sum. It is no where found that this sum was the precise value of the stone as delivered; and, for ought which appears from the commissioner's report, they may have deducted the value of the stone while in the quarry, from what would otherwise be the amount of Walton's indebtedness. It is consistent with the report that they should have done it; and we are not to presume they did not, for the sake of reversing the judgment of the county court. The case of *Martin* v. *Porter* 5 M. & W. 351, and *Wingate* v. *Smith* 20 Maine 287, to which we have been referred by the defendant's counsel, are not cases where a change in the title to the property had been effected.

Judgment of the county court is affirmed against the trustee with costs, and is, *pro forma,* affirmed against the principal debtor without costs.