STANDARD OIL COMPANY OF NEW YORK *v.* HARRY DOLGIN.

October Term, 1921.

Present:  WATSON, C. J., POWERS, TAYLOR, MILES, and SLACK, JJ.

Opinion filed November 1, 1921.

*Fixtures—Lease of Personal Property a Bailment—Annexation of Personal Property Bailed to Land by Bailee—When Such Property Becomes Real Estate—Evidence—Submission of Unnecessary Issues to Jury Harmless to Party Benefited.*

1.  Where plaintiff, by written lease, leased a gasoline storage tank for use by the lessees on their premises, the transaction was a bailment, and, as between plaintiff and the lessees, setting the tank in the ground and covering it with earth did not cause it to become real estate.

2.  The annexation by a bailee to his land of personal property bailed, with or without the knowledge and consent of the bailor, does not change the character of the property, and the bailor may recover it from the bailee's grantee, even though the latter be an innocent purchaser, unless the annexation be of such a character that the identity of the chattel is thereby lost, and it cannot be removed without substantial injury to itself or the real estate.

3.  In an action of replevin by a bailor to recover a storage tank attached to the land of the bailee, where there was a conflict in the evidence as to the damage to the land resulting from its removal, the question was for the jury, and any evidence tending to show that no material damage was done to the tank or the land by its removal was admissible.

4.  Where the court unnecessarily submitted issues to the jury, which operated as a gratuity to the defendant, any errors therein were harmless as to him.

ACTION OF REPLEVIN to recover a gasoline storage tank. Plea, the general issue. Trial by jury at the December Term, 1920, Caledonia County, *Chase,* J., presiding. Verdict and judgment for the plaintiff. The defendant excepted. The opinion states the case.

*Shields & Conant* for the defendant.

*Searles & Graves* for the plaintiff.

POWERS, J.　　The plaintiff is seeking to establish its title to a certain gasoline storage tank, which the defendant claims to own under a deed hereinafter referred to.

[1, 2]　It appeared at the trial below that the plaintiff leased this tank to the firm of Healy & Allen, who operated a public garage at St. Johnsbury.　The lease was in writing, and provided that the lessees should have the tank at a nominal rent to use in handling the plaintiff's petroleum products; that the title should remain in the plaintiff, and that in specified circumstances the plaintiff could enter and remove it.　After this lease was executed, Healy & Allen installed the tank on their garage premises by placing it in a shallow excavation and covering it over with dirt, a part of which was drawn in for that purpose. This method of installation was adopted to avoid injuries to the tank, and to lessen the fire hazard, only.　Later, and on July 7, 1920, Healy, having acquired Allen's interest in the premises, sold and conveyed the same by warranty deed to the defendant, without reservation of the tank.　Soon after the plaintiff sought to repossess itself of the tank, and the defendant objecting and claiming to own it, this action of replevin was brought.

The questions involved in this review may be somewhat simplified if we observe at the outset the relation of the parties to the controversy.　It is seen that the question of title does not arise between vendor and vendee, lessor and lessee, life tenant and remainder man, or heir and administrator, but between a lessor and the lessee's grantee.　The written lease created a mere bailment of the tank. 24 Cyc. 879. That it was the property of the plaintiff, and personal property in its hands, is apparent. As between the parties to the lease, its character and ownership remained unchanged.　The plaintiff has never parted with its title or consented to a change in the character of the property, unless such a result follows from the method of installation and subsequent conveyance of the real estate.　The rule of law governing such cases is easily stated, though not always easily applied.　It is this:　The annexation by a bailee to his own real estate of personal property bailed, with or without the knowledge and consent of the bailor, does not change the character of the

property, and the bailor may recover it of the bailee's grantee, even though the latter be an innocent purchaser, unless the annexation is of such a character that the identity of the chattel is thereby lost, and it cannot be removed without substantial injury to itself or the real estate. The purpose and intention of the installation are incidentally involved, but the ultimate tests are as above stated. The rule of this jurisdiction is found in *Cross* v. *Marston*, 17 Vt. 533, 44 A. D. 353. There certain personal property belonging to the plaintiff was attached by another to a building belonging to the latter, but for the convenience of the business therein carried on, and in such a manner that it could be removed without injury to itself or the building. It was held that such property did not pass by a deed of the building to an innocent purchaser; that the fact that the owner of the chattels knew all about what the bailee had done, and had permitted his property to remain in the situation described for a period of five years and until after the conveyance referred to did not result in the loss of his right to reclaim it; that the question was whether the chattels had, by the manner of annexation to the freehold, so far lost their identity as to cease to have legal existence as personal property, and that if they had not, an estoppel only could preclude the owner from reclaiming them.

We are aware that it is held in some jurisdictions (see *Fryatt* v. *Sullivan Co.*, 7 Hill [N. Y.] 529) that, even though the bailee's annexation of the chattel is tortious, the owner cannot reclaim it, but must look to the bailee for his damages. But with us the method and result of the attachment control. If the identity of the property is lost, as where bricks are built into a building, stone laid in a wall or walk (*Jackson* v. *Walton*, 28 Vt. 43), it becomes a part of the real estate. In determining this question, the intention of the party in making the attachment and the damage involved in its removal are for consideration.

The case in hand cannot be distinguished from the Cross Case above referred to. Indeed, this case is stronger for the plaintiff than that one. There the defendant was an innocent purchaser; here, by the great weight of the testimony, at least, the defendant knew when he purchased that the plaintiff owned the chattel. There the plaintiff knew that the chattel was attached to the building, and by implication consented; here there is nothing in the evidence to show that the plaintiff knew or con-

sented to have the tank installed as it was. We do not, however, base our decision at all upon these features of the case.

[3]　The view we take of the law governing the case renders most of the trial errors complained of by the defendant immaterial and harmless. The original character of the tank as personal property, the plaintiff's title to it when the lease was executed, and the manner of its installation were established by undisputed evidence. The only material question on which it can be said that the record shows a conflict in the evidence was as to the damage to the real estate resulting from the removal of the tank. And as to this the conflict was hardly worthy of the name. But assuming that the testimony of the defendant on this subject created a conflict, the question was for the jury, and any evidence legitimately bearing on the subject was admissible. So the defendant's exception to evidence tending to show that no material damage was done to the tank or the land by its removal is not sustained.

[4]　All the other exceptions briefed relate to the intention and purpose of installing the tank and the notice which the defendant may or may not have had of the plaintiff's ownership. The intention and purpose were conclusively established by the written lease, and, as we have seen, the plaintiff's rights did not depend upon the defendant's knowledge. So the action of the court in submitting these questions to the jury was a gratuity to the defendant and any errors involved were harmless.

*Judgment affirmed.*