## ELECTRICAL RESEARCH PRODUCTS, Inc., v. HANIOTIS BROS. et al.

No. 23338.  Dec. 18, 1934.

Nowlin, Spielman & Thomas and Steele & Boatman, for plaintiff in error.

John L. Maynard, for defendants in error.

McNEILL, J. This is an action to recover payments due under a contract for license to use a certain sound equipment in a theater and for parts and supplies furnished in said equipment in accordance with said contract.

Plaintiff in error, being the plaintiff in the trial court, on July 3, 1929, contracted with the defendants, Haniotis Brothers, a copartnership, for the installation and use of a Western Electric Sound Reproducing Equipment in their theater at Okmulgee. Under the terms of the contract, which was referred to as a grant of license and installation of equipment, and also as a nonexclusive and nonassignable license to use said equipment, said defendants, as an installation charge, agreed to pay said plaintiffs an initial charge of $3,250, $1,300 of which was to be paid upon acceptance of the agreement and $1,950 on completion of the installation of the equipment. The contract also provided that defendants pay $105.95 for the first 104 weeks. In addition thereto, the contract provided for weekly payments in the sum of $43.75 per week for the first 26 weeks, $37.50 per week for the next 26 weeks, and $30 per week for the balance of the term of said ten years, which weekly payments of $43.75, $37.50, and $30 per week, respectively, were for service inspection charges.

The equipment was installed, and was used by Haniotis Brothers from August 14, 1929, to December 24, 1929, when said Haniotis Brothers ceased to operate said theatre and assigned their interest therein, including the contract in question, to the Okmulgee Theatre Company and A. B. Momand.

The plaintiff was notified of the assignment, and the Theatre Company notified the plaintiff that it would not assume the contract between plaintiff and Haniotis Brothers unless the plaintiff agreed to a modification of the contract. Negotiations were entered

into relative to the modification of the contract, but no agreement was ever reached between the plaintiff and the Theatre Company. The Theatre Company, at the time it purchased said theatre, agreed in writing with Haniotis Brothers to assume the lease or contract which had been entered into between plaintiff and Haniotis Brothers covering said Western Electric equipment. The Theatre Company took possession of the leased premises and used the sound equipment from December 24, 1929, to February 14, 1930. During the time said Theatre Company was in possession of said theatre and used said equipment, no payments were made to the plaintiff under said contract. Plaintiff made demand for payment of said payments scheduled under the contract, and, in default of the payments, plaintiff, on February 14, 1930, instituted replevin proceedings for recovery of said equipment, with damages for its detention. The Theatre Company gave a redelivery bond and retained possession of the equipment pending outcome of replevin proceedings. On March 21, 1930, the equipment was voluntarily returned to the plaintiff by the Theatre Company.

Subsequent to the institution of replevin proceedings, plaintiff brought the instant action on the contract to recover the payments scheduled thereunder as due for the period from December 24, 1929, the date Haniotis Brothers assigned the lease to said Theatre Company, to February 14, 1930, the date of the institution of said replevin proceedings. The action at bar also covered merchandise and parts which had been purchased on open account.

The defendants Haniotis Brothers filed an answer and cross-petition admitting the execution of the contract sued on, pleading and contending, in substance, that the plaintiff was precluded from maintaining the instant action because of the prior institution of the action in replevin; that by reason thereof, the present action was barred by plaintiff's prior election of remedies in bringing said action in replevin against the same parties; that such action operated to rescind the contract; that defendants Haniotis Brothers were liable only for the reasonable value of the equipment from the date of its installation, which value was to be ascertained by dividing the total payment to be made under the contract by the total number of weeks of the license. 520 weeks.

The defendant Okmulgee Theatre Company contends that it was liable only for the reasonable value of the equipment at the rate of $27.44 per week from the date of the assignment, and said Theatre Company also prayed for damages in the sum of $1,035, $500 of which included expenses of a trip to New York, made at the request of plaintiff, and $535, representing the damages in removing wiring and conduit systems from the theatre in the removal of the sound equipment.

The matter came on for hearing to the court without the intervention of a jury, and, at the request of the defendants, the court made general findings of fact and conclusions of law. The court sustained the general view of the defendants, and held that the plaintiff, when it instituted its action in replevin, chose to rescind its contract, and by reason thereof could not sue for the amount alleged to be due thereunder.

The court, in substance, found that the sound producing machine was to remain in said theatre for ten years, or 520 weeks, and then to be returned to plaintiff, for which Haniotis Brothers agreed to pay the total sum of $14,268.80; that $1,300 was paid upon the execution of the contract, $1,950 upon the installation of the machine, and the remainder was to be paid in 104 weekly installments of $105.95; that the defendants agreed to pay a weekly service charge of $43.75 for the first six months, $37.50 for the second six months, and $30 each week thereafter; that during said time the title was to remain in the plaintiff; that said contract was not assignable without the consent of plaintiff; that the defendant Haniotis Brothers used said equipment in said theatre until December 24, 1929, making the payments thereon, when they sold said theatre and equipment to the Okmulgee Theatre Company.

The court also found that the defendant Okmulgee Theatre Company, Inc., at the time it entered into the contract with Haniotis Brothers for the purchase of said Yale Theatre, on December 24, 1929, assumed said contract of July 3, 1929, as evidenced by an express clause, to wit:

"Party of the second part agrees to assume, upon taking possession under this lease, a certain contract made by the party of the first part with Electrical Research Products, Inc., covering Western Electric equipment now installed in said Yale Theatre."

The court also found that the Theatre Company, upon taking charge of the said

theatre, immediately notified plaintiff it would not assume said contract, unless modification was made in relation to the payments therein provided for by said contract; that plaintiff requested an officer of the Theatre Company to come to New York for a conference, as a result of which no agreement was reached, and said Theatre Company was thereby delayed in the purchase of a new sound equipment until the plaintiff made demand for the return of its property.

As to the defendants Haniotis Brothers, the court found that upon the execution of the contract for said sound equipment, said defendant became liable for the payment therein provided; that they paid the original payment of $1,300 at the execution of the contract, and the further sum of $1,950 upon the installation of the equipment, and thereafter paid the rentals up to and including the last week in December, 1929, being 18 weekly installments of $105.95, or a total of $1,907.18, up to the time the plaintiff recovered possession of the property.

The court concluded, as a matter of law, that the contract sued on was for the rental of personal property; that the total rental payments provided in the contract amounted to $14,268.80, for 500 weeks; that the plaintiff, having repossessed the property, could retain only the earned rental of $850.64; that the defendants Haniotis Brothers, having paid $5,157.10, which was $4,306.47 more than the earned rentals which were due, were entitled to recover from plaintiff the sum of $4,306.47, being the payments which they had paid in excess of the earned rentals.

As to the Okmulgee Theatre Company, the court concluded that said company was liable to plaintiff for the reasonable value of the use of plaintiff's sound equipment from December 24, 1929, to the date of the replevin action, February 14, 1930, in the total sum of $204.84; and for the time it used said equipment after filing the replevin action, it was liable as found in said replevin action in the district court, but that said amount was subject to a credit of $500, and plaintiff was liable for the difference.

The court entered its judgment based upon these findings of fact and conclusions of law, awarding judgment to the plaintiff against the defendant Okmulgee Theatre Company for the sum of $204.84, and for a judgment in favor of the defendants Haniotis Brothers and against the plaintiff in the sum of $4,306.47.

The questions presented by the briefs are primarily questions of law. The major question involves the harsh and unfavored doctrine of election of remedies, which is generally regarded as analogous to the law of estoppel. As touching this question, it is the contention of the plaintiff that the instant suit, being an action ex contractu, is not barred by the prior institution of the action in replevin for the sound equipment on the theory that there has been an election of remedies. E converso, the defendant contends that on the signing of the agreement by Haniotis Brothers, plaintiff became entitled to two remedies alternatively; that plaintiff might have elected to affirm the contract and sue for its breach, or, in lieu thereof, plaintiff might have sued to recover its equipment, and by doing so disaffirm and rescind the contract; that having elected to institute an action of replevin for the recovery of the equipment, plaintiff is now barred under the doctrine of election of remedies from maintaining the instant action for the recovery of certain scheduled payments due under the contract during the period between the assignment by Haniotis Brothers and the institution of the replevin proceedings.

It is urged by the defendants that where two inconsistent remedies exist, if one remedy is pursued, the other is waived, and that this constitutes a bar to the prosecution of the other. Plaintiff counters this theory of election of remedies by urging that the remedies pursued by plaintiff were consistent, and that the right to recover under the contract for the default payments accruing to the plaintiff and the right to the possession of the property were cumulative rights, and not alternative or inconsistent rights; that of the two actions, the one to recover judgment for payments accruing under the contract up to the filing of the replevin action, does not call for the same relief, nor is it based upon the same facts as an action to repossess or replevin the equipment; that there is no infringement of that same right; and that the two causes are not designed to accomplish the same results. It must be remembered that this action does not involve the recovery of payments due under the contract for the balance of the ten-year term; that is, for payments due under the contract after plaintiff had replevined the sound equipment.

20 C. J. page 8, announced the following rule:

"Election of remedies is the act of choosing between remedies allowed by law on the same set of facts where the party has but

148

one cause of action, one right infringed, one wrong to be redressed. The doctrine does not require election between distinct causes of action arising out of separate and distinct facts."

See, also, Cinamon v. St. Louis Rubber Co. (Mass.) 118 N. E. 327; Barfield v. J. L. Coker & Co. (S. C.) 53 S. E. 170.

In the case of Peters v. Bain, 133 U. S. 670, 33 L. Ed. 696, the Supreme Court of the United States announced the rule that one may not have two recoveries for the same wrong. The court said:

"The doctrine of election rests upon the principle that he who seeks equity must do it and means, as the term is ordinarily used, that where two inconsistent or alternative rights or claims are presented to the choice of a party by a person who manifests the clear intention that he should not enjoy both, then he must accept or reject one or the other."

Where there is one redressible wrong, the suitor will not be permitted to choose more than one enforceable remedy.

In the case of Henderson Tire & Rubber Co. v. Gregory, 16 F. (2d) 589, Judge Booth of the Circuit Court of Appeals of the Eighth Circuit, in speaking of the doctrine of election of remedies, which has been criticized as a harsh rule and not favored in equity, though widely recognized both in federal and state courts, said:

"The doctrine stated in its simplest form means that, if a party has two inconsistent existing remedies on his cause of action and makes choice of one, he is precluded from thereafter pursuing the other. The doctrine may be applicable as well where the remedies are against different persons as where they are against the same person.

"From the authorities cited there may be deduced the following conclusions: (1) The essential elements of the doctrine are (a) the existence of the two remedies; (b) the inconsistency between the remedies; (c) the choice of one of the remedies. (2) If any one of these elements is absent, the result of preclusion does not follow. (3) The pursuit of a supposed, but nonexistent, remedy does not constitute an election."

In the case of Crittenden v. St. Hill, 34 Cal. App. 107, it was specifically held that:

"Where the law affords distinct, but not inconsistent, remedies, an election to follow one does not operate as a waiver of the other."

That case involved an action for unlawful detainer, and it was held that the institution of an action for rent was not an election of remedies or a waiver of the right to sue for possession of the premises so as to preclude the lessor from bringing an action in an unlawful detainer. In that case it was contended as a matter of law that when the defendant became in default, plaintiff had an election of two remedies, to commence an action for rent or to institute unlawful detainer proceedings. It was urged that plaintiff, having elected to pursue in the first instance an action for rent, thereby affirmed the lease, and in doing so waived his right to the latter remedy by instituting an action for unlawful detainer. The court said:

"In our opinion the mere institution of the rent action did not have the legal effect claimed for it, nor did it indicate a waiver of the right to maintain action for the possession of the premises. By the original action plaintiff was seeking to recover the rent due him, and being resisted in that action, he has resorted to a more expeditious proceeding to accomplish this result. The basis of the doctrine of election of remedies is founded in the proposition that where there is, by law or by contract, a choice between two remedies, which proceed upon opposite and irreconcilable claims of right, the one taken must exclude and bar the prosecution of the other. The doctrine is, therefore, generally regarded as being an application of the law of estoppel. * * * Nor are the two actions, in our opinion, inconsistent. One is for the income of the property, the other for the possession of the property itself, which is in part based upon the latter default. * * * The rights litigated in the two actions are therefore entirely different; and where the law affords distinct but not inconsistent remedies, the election to follow one does not operate as a waiver of the other. * * *"

Under the foregoing authorites, it appears apparent that a replevin action and the action at bar are in no way related to each other except that the rights do grow out of the same contract. The facts surrounding each action are separate and distinct. The instant action is based upon the liability of payment due under the contract. The replevin action is based upon the wrongful act of detention by reason of the default of payments agreed to be paid under the contracts. The institution of the action in replevin did not bar the right to institute the action to recover payment due under the contract up to the time of the replevin of the sound equipment.

It is also urged that when the contract was terminated by the plaintiff because of the defendants' default, defendants became liable to pay the sum agreed by the contract, and not merely such proportion thereof as was the result of the period for which the defendants had actual use of the equipment. Defendants maintained that the contract, although designated as a license, is .

in fact a bailment for hire, or lease, and that defendants were liable only for that proportion of the total contract price covering the ten-year period of the agreement which represented the time during which the equipment was actually used, and that the down payment of $3,250 and the provisions in the contract for acceleration of the payment schedules under the contract in the event of defendant's default constituted a penalty, and that such provisions were void under the laws of Oklahoma. On this phase of the case plaintiff asserts that it is immaterial whether the contract is in fact a license or a lease, though it appears that the evidence warrants the establishing of a contract that is one of license.

The contract in question relative to the precipitation of payment in the event of default specifically provided:

"In the event of a default under any of the provisions of this section at any time during the first period of 104 weeks of the term of this license, the entire balance of weekly payments for the said period shall be due and payable forthwith at the option of Products and whether or not it terminates this license or removes the equipment as hereinafter provided. The license hereby granted and all obligations imposed upon Products by virtue of this agreement shall be suspended during the continuance of any event default."

In the case of Electrical Products Corporation of Colorado v. Mosko (Colo.) 297 P. 991, plaintiff, the manufacturer and lessor of electrical signs, built and installed a certain electrical sign reading "Used Cars." The contract appears in the form of a lease, employing terminology in leasing real estate. It provided that plaintiff was to receive 36 monthly payments called rental of $21 each, payable in advance on the first day of each calendar month after the erection of the sign, except for the payments due for the last two months of the term, which were paid in advance, and except for rental for the period of four days, which proportionate sum was paid when the sign was installed. The contract also provided that plaintiff, upon defendant's default in any installment, might retake the sign, and that all payments after said default should be precipitated and become immediately due and payable. In that case, the court held that the contract was for bailment for hire, and the bailor might declare the balance of the rental due, and have the right thereupon to take possession of the sign, and hold it until such balance was paid, whereupon the bailee would be entitled to use the sign for the balance of the term of the bailment,

and that the bailor in repossessing the electric sign after the bailee defaulted in paying the rental was not required to sell the sign to mitigate damages, since the bailor was entitled to have the market left open for new sales with profit. In that case the contract provided that the bailor, upon repossessing the sign, would have to keep it in readiness for redelivery when the bailee paid the balance of the rentals. In that case it was contended that the contract was void because it imposed the penalty because it had no reasonable relation to the damages suffered by the plaintiff. In that case the court said:

"The transaction is to be classified as a bailment for hire. Standard Oil Co. v. Dolgin, 95 Vt. 414, 115 A. 235, 17 A. L. R. 1218. In such bailments, as is stated in substance in Warth v. Mack (C. C. A.) 79 F. 915, where the bailor resumes possession of the hired chattel before the end of the agreed period, the bailee is liable only pro tanto for payment of the hire: but he may agree to terms that will compel him to continue payment under any circumstances. Broadly speaking, it seems to us that the case at bar presents a situation where the defendants have by valid terms made themselves liable for the entire rental provided in the contract.

"The analogy between the contract and a lease of real estate is frankly admitted by counsel for plaintiff, as is the general rule in such cases that where the landlord re-enters and retakes possession, future rent cannot be collected because of the consequent failure of consideration, and this point is stressed by counsel for defendants. But the plaintiff insists that many other considerations accrued to the defendants which distinguish this agreement from a lease of realty and summarizes them thus: (1) The sign was made specially for the defendants and is of no use to the plaintiff as neither the sign nor the materials of which it is made can be sold or reused. (2) The retaking of the sign, even if it could be sold to another, destroys the plaintiff's outlet for a new sale with full profits. (3) The plaintiff has paid all the costs of installation of the sign. (4) Defendants are granted the use of a patented article. (5) The plaintiff is obligated to keep the sign serviced and repaired. * * *

"As to the right of the plaintiff to retake and keep the sign without selling it or otherwise endeavoring to mitigate its damages, we think the argument that it is entitled to have the market left open for new sales with full profit has merit. One who has a parcel of real estate cannot multiply it. If he retakes possession he has regained usually the full consideration for which he parted with it. But one who manufactures an article capable of infinite production

destroys new outlets with full profits when he reclaims and resells his products. Then, too, we must consider the duty imposed upon the plaintiff to keep the sign in readiness for redelivery if any, and when the defendants pay the balance of the rentals."

From all the facts and circumstances, it appears to be a reasonable intent and correct conclusion to draw from the contract in question that the down payment concerning the sound instrument in question was purposely designed to protect the interest of the plaintiff and designed to be the measure for liquidated damages. Under section 9490, O. S. 1931, it is provided:

"A stipulation or condition in a contract providing for the payment of an amount which shall be presumed to be the amount of damages sustained by a breach of such contract, shall be held valid, when, from the nature of the case, it would be impracticable or extremely difficult to fix the actual damages."

In 20 C. J. 948, the following rule is announced:

"A payment by one of two contracting parties to the other, stated to be in part payment of the purchase price or consideration of the transaction, with the provision that it shall be retained by the party to whom it is paid on default of the other to complete the contract, is ordinarily regarded as a liquidation of damages."

It does not appear, prima facie, that the down payment required for the installation of an instrument of such a technical character and the service thereof to be contemplated to be furnished can be said to be unfair and unreasonable. No intimation has been suggested that the sum which had been agreed to be paid under the contract was unreasonable. It was unquestionably exacted for the protection of the plaintiff in the event of the defendant's default. The five elements heretofore quoted in the Mosko Case, supra, have force and application to the facts in the instant case. The down payment feature of the contract is separate from the precipitated payment, which latter payment plaintiff does not seek to recover in the instant action. Section 9488, O. S. 1931, is as follows:

"Penalties imposed by contract for any nonperformance thereof are void, but this section does not render void such bonds or obligations, penal in form, as have heretofore been commonly used; it merely rejects and avoids the penal clauses."

Viewing the contract as we do, in the light of the facts and circumstances, we hold that the down payment provision was a reasonable requirement to exact for the purpose of protecting the interest of the plaintiff.

We conclude that the judgment rendered in favor of the defendant was erroneous, and that the institution of the replevin action is no bar to the instant action; that the down payment exacted under the contract was reasonable in the protection of the interest of plaintiff, but did not constitute a penalty, but furnished a proper measure of plaintiff's recovery which was assented to and agreed to by the contracting parties; that the proration theory adopted by the trial court in granting defendant recovery of the sum over and above the sum of $27.44 per week was erroneous.

The case is remanded, with directions to enter judgment herein on behalf of the plaintiff in the sum of $1,223.32.

RILEY, C. J., and SWINDALL, ANDREWS, OSBORN, and BAYLESS, JJ., concur. CULLISON, V. C. J., and BUSBY and WELCH, JJ., absent.