FIRST NATIONAL BANK *v.* LUIGI NATIVI.

(49 A2d 760)

May Term, 1946.

Present: MOULTON, C. J., SHERBURNE, BUTTLES, STURTEVANT and JEFFORDS, JJ.

Opinion filed October 1, 1946.

*H. C. Shurtleff* for the plaintiff.

*Finn & Monti* for the defendant.

MOULTON, C. J.    The declaration alleges that the defendant broke and entered the plaintiff's granite manufacturing plant, pulled down the walls of the building and carried away one air compressor and two electric motors which formed a part of the building.    The plea is the general issue.    The trial was by the court, after which written findings of fact were made and judgment rendered for the plaintiff to recover the sum of $50. with interest thereon from August 1, 1944.    Both parties have filed bills of exceptions.

The findings show that the plaintiff deeded the land and premises to John R. and George R. Booth on June 4, 1937, the deed containing the provision that: "There is also conveyed herewith the buildings on said premises together with all the machinery therein."    The Booths, on the same day, executed a mortgage to the plaintiff, which did not mention any machinery, but, in the condition, stated "and provided further that we keep the buildings and contents insured against loss of fire for the benefit of said bank."    This mortgage was foreclosed by the plaintiff and the foreclosure became absolute on February 14, 1939.    The decree made no mention of machinery, although it recited the foregoing condition regarding insurance.

The Booths conducted a granite business on the property.    At the date of the mortgage to the plaintiff the air compressor and the two motors were not in the buildings, and had not yet been purchased by them.    These machines were bought on June 5, 1937, and installed in a lean-to adjoining the main building.    In order to do so it was necessary to remove, and afterward to replace, one end of the lean-to.    Cement bases were constructed on which to place the compressor and the motor that operated it, in order to lessen vibration.    Each base extended four feet into the ground and two feet above the floor, one being seven and one quarter feet by seven and two thirds feet, and the other, four and one half feet by four feet in dimensions.    Bolts were headed into the cement before it set, and fitted into holes in the bottom parts of the compressor and motors, and the machines were held by nuts screwed upon the bolts.    The second motor was installed in similar

manner, and was used to furnish power to operate an overhead travelling crane, polishing wheels and other machinery. The compressor and its motor replaced a machine that had been in the plant previously and had been scrapped, but the court was unable to find that this machine was in the plant when the real estate was sold by the plaintiff to Booth Brothers, or when the property was mortgaged to the plaintiff.

On January 7, 1938, and July 18, 1938, Booth Brothers for value received, mortgaged all the machinery and equipment at their plant "not now covered by mortgage or lien" and "not previously mortgaged" to Rinaldo and Anita Albertini, husband and wife. These mortgages were foreclosed on March 8, 1941, and the property sold by the sheriff to Rinaldo. The sale included the compressor and the two motors. After the foreclosure of the plaintiff's and the Albertinis' mortgages they agreed to work in harmony in an effort to sell all the property, both real and personal, as a unit, and they had keys to the buildings whenever the property was shown to prospective purchasers. Rinaldo Albertini died on December 27, 1943, and thereafter, his widow, Anita, owned the property obtained by foreclosure of the chattel mortgage. On January 28, 1944, she sold the compressors and the two motors to the defendant and Anna Binovenuti, partners doing business under the name of Nativi and Company. Some six months after this sale the defendant sent his agent to remove the compressor and motors from the premises. The lean-to in which they had been placed was so constructed that one end of it could be removed, which was done, and the end replaced without damage to the structure after the removal of the machinery. The motors were removed by unscrewing the nuts from the bolts and lifting the machines from the concrete bases; the compressor by sawing off the bolts at the level of the base. The bases used for the motors were undamaged and could be used again, but the one used for the compressor would require the drilling of new holes and insertion of new bolts, which would cost $50. The compressor and motors were used to furnish air and electric power for the granite cutting business conducted on the premises by the Booth Brothers, and their removal left the property entirely without power. Unless other machinery for this purpose should be installed any granite cutting would have to be done by hand. The value of the com-

pressor and motor that operated it was $355. and the value of the other motor was $200.

The findings conclude with the statement that the compressor and two motors were not sold or conveyed by the plaintiff to the Booths, were not mortgaged by the Booths to the plaintiff, and were mortgaged to the Albertinis. This, of course, is in effect a holding that these machines were not fixtures, but personal property.

■ The decision in this cause rests upon the correctness of this holding by the trial court. Where, as in this jurisdiction, a mortgage of real estate conveys title, the rule is that fixtures are a part of the land and go with it. *Paine* v. *McDowell,* 71 Vt 28, 32, 41 A 1042. If placed upon the mortgaged premises subsequently to the execution of the mortgage they enure to the benefit of the mortgagee, *Hill* v. *Wentworth,* 28 Vt 428, 439; *Davenport* v. *Shants,* 43 Vt 546, 552, although this rule is subject to an exception, not material here, in favor of a conditional vendor of chattels sold to the mortgagor, and by him annexed to the land after the execution of the mortgage. *Paine* v. *McDowell, supra,* at p. 33; *Davenport* v. *Shants,* 43 Vt at p. 551.

The rule of law governing cases wherein it is claimed that articles of personal property have been so annexed to the freehold that their identity as chattels has been lost is, as the late Chief Justice Powers remarked in *Standard Oil Co.* v. *Dolgin,* 95 Vt 414, 415, 115 A 235, 236, 17 ALR 1218, "easily stated though not always easily applied." In *Hackett* v. *Amsden,* 57 Vt 432, 435-6, the law upon the subject was said to be in a "chaotic state" which rendered it impossible to formulate any general rule, and made it necessary to determine each case upon its own circumstances. It would appear, however, that the "general rule" mentioned in the case just cited was intended to refer to a rule of application, because the law as to the nature and constitution of fixtures had been previously stated in several of our decisions. ·With regard to machinery the court had this to say, in *Hill* v. *Wentworth,* 28 Vt 428, 436-7: "We think the rule in this state should be that various articles of machinery belonging to a manufactory are, in no respect, real estate, excepting as they are a part of the freehold, or substantially attached to it, and that it is not sufficient to make them a part of the freehold if they are attached to the building for the

purpose, and in the manner adopted to keep them steady, and that their use may be more beneficial as chattels, and in such a way that will permit of their removal without any material injury to the freehold or to the chattels. Neither is it enough to make them real estate that they are essential to the occupation of the building for the business carried on in it. . . . But to make the test, whether fixture or no fixture, to be found in the relation which the chattel bears to the use of the freehold, is, to us, unwise and against well considered cases." It was also held that in the determination of the question reference must be had to the manner and extent of the annexation, to the object and purpose of it, and to the nature of the articles themselves, and: "To change the nature and legal qualities of a chattel into a fixture, requires a positive act on the part of the person making the annexation, and his intention to do so, should positively appear, and if this be left in doubt, the article should be held still to be personal property." The doctrine of *Hill* v. *Wentworth* has been re-stated and approved in *Fullam* v. *Stearns,* 30 Vt 443, 452; *Bartlett* v. *Wood,* 32 Vt 372, 378-9; *Harris* v. *Haynes,* 34 Vt 220, 225-6; *Sweetzer* v. *Jones,* 35 Vt 317, 321-2, 82 Am Dec 639; and *Kendall* v. *Hathaway,* 67 Vt 122, 126, 30 A 859.

At first sight the applications of the principle with regard to machinery seem to have been conflicting. In *Hill* v. *Wentworth,* the question was as to machinery in a paper mill, part of which was fastened to the building by screws or cleats held by bolts, and a boiler placed in brick laid upon a stone foundation. All of these articles were held to be chattels. But the iron shafting secured by means of iron hangers bolted to the beams and sills of the building, and used for the purpose of communicating power to operate the machinery was considered to be a constituent part of the mill and therefore real estate. In *Fullam* v. *Stearns, supra,* machinery in a bedstead shop propelled by water power fastened to the building by being spiked to the floors, studs and posts and shafting and pulleys similarly secured, was held to be personal property. In *Bartlett* v. *Wood, supra,* machinery consisting of several lathes, a press drill, a press punch, a trip hammer and two saws, one circular and one upright, operated by water power, bolted or securely nailed to the floor or sides of the shop, was said to be fastened in a manner showing that the purpose was to make a

20

moveable machine firm for use in that place, and to be removable without serious injury to the building, and therefore not a part of the freehold. In *Harris* v. *Haynes, supra,* boilers set in brick and resting upon a cast iron arch mouth, a steam engine fastened to the sill of the building by a bolt and nut and shafting and pulley bolted to the building were regarded as fixtures. It was said that there was nothing in the mode and extent of the annexation of the engine that was inconsistent with its character either as a chattel or as a fixture and so the determination of the question must rest upon the object and purpose of the annexation, which was the furnishing of motive power for the carriage shop in which it was installed. The same result was reached in *Sweetzer* v. *Jones, supra,* where a boiler was also set in brick and a steam engine bolted to a granite base, and it was said that the fact that the engine which furnished power to the mill could be readily removed could not be considered as affecting the character of an actual and permanent annexation to the freehold. In *Davenport* v. *Shants, supra,* water wheels, in wheel pits and attached gears and belts, and a saw with its appurtenances bolted to the floor timbers of the mill were held to be fixtures. In *Newhall and Stebbins* v. *Kinney and Miles,* 56 Vt 591, 592, a circular saw mill, placed in a building erected for a saw mill as a part thereof, although it could be removed without material injury to other parts of the building, was held to be included under a levy of execution upon the mill as real estate. But in *Kendall* v. *Hathaway, supra,* a circular saw mill so placed and constructed that it could be removed without injury to itself or to the building was held to be personal property.

But in all these decisions, even where they appear to render no more than lip service to the rule stated in *Hill* v. *Wentworth,* is seen at least a tacit recognition of the test applied by the great weight of authority, which involves three elements: (1) the annexation of the article, whether actual or constructive; (2) its adaptation to the use of the realty to which it is annexed, and (3) the intention with which the annexation has been made, whether or not to make it a permanent accession to the freehold. The determination of the question does not rest upon any of these elements alone, but upon a consideration of all of them together. The present day tendency is to regard the manner of annexation taken by itself as of relatively small significance, and to give much

weight to the adaptation of the machine to the use of the realty, considered in connection with the intention with which the annexation has been made. The intention to make the article a permanent accession to the freehold must, of course, affirmatively appear, and a doubt as to this factor causes it to remain a chattel. *Citizens Bank* v. *Mergenthaler Linotype Co.,* 216 Ind 573, 25 NE2nd 444, 447-8; 22 Am Jur tit "Fixtures" p. 715, para. 3, and cas. cit. It is now well recognized that as between mortgagor and mortgagee, where a building is specially adapted to certain uses, machinery attached thereto that is essential to the purpose to which the building is devoted and is intended for permanent use therein becomes a fixture regardless of the manner of its annexation. *Lessor* v. *Bridgeport-City Trust Co.,* 124 Conn 59, 198 A 252, 254, 123 ALR 687; *Pennsylvania Chocolate Co.* v. *Hershey Bros.,* 316 Pa 292, 175 A 694, 696, 99 ALR 139; *Citizens Bank* v. *Mergenthaler Linotype Co., supra*; *Szilagy* v. *Taylor,* 63 Ohio App 105, 25 NE2nd 360, 361; *Southbridge Savings Bank* v. *Mason,* 147 Mass 500, 502, 18 NE 406, 1 LRA 350; *McConnell* v. *Blood,* 123 Mass 47, 25 Am Rep 12, 13; *Morostock Ins. Co.* v. *Rodefer,* 92 Va 747, 53 ASR 846, 850; *Gunderson* v. *Swarthout,* 104 Wisc 186, 80 NW 465, 76 ASR 860, 863; 22 Am Jur tit "Fixtures" p. 791, para. 70, and cas. cit. And see, *Appeal of Defense Plant Corpn.,* 350 Pa 520, 39 A2d 713, 714, Aff. 66 S Ct 992. This view is reflected in our decisions in *Harris* v. *Haynes,* and *Sweetzer* v. *Jones,* to which reference has been made.

The principle is applicable here. There can be no doubt on the findings in this cause that the two motors and the compressor were installed by the Booths with the intent that they should be permanently used therein as a constituent part of the plant, and that they were essential to the operation of the business, since, as in our two decisions last cited, they furnished the power for the other machinery and appliances. The finding that they were bolted to their cement bases in order to lessen vibration does not affect the question of their permanence. They were not temporarily secured to make them steady for use, but placed upon foundations specially prepared for them.

Whether or not an article is a fixture is, generally speaking, a mixed question of law and fact. *Walker Dishwasher Corpn.* v. *Medford Trust Co.,* 279 Mass 33, 180 NE 517, 518, 81 ALR

1437. On the facts as found by the trial court we hold that the two motors and the compressor were fixtures. It was error to refuse to give judgment for the plaintiff for their combined value which, according to the findings, amounted to $555.

Under the circumstances, there is no necessity to give attention to the defendant's exceptions which are founded upon the theory that the cement bases were not a part of the freehold, and hence that no damage could be allowed for their act in cutting off the bolts that held the compressor. The bases were clearly permanently attached to the realty and a part of it. No error appears in the allowance of damage for the injury to one of them, in the sum of $50.

*Judgment Reversed, and Judgment for the plaintiff to recover the sum of $605. and its costs.*

### ON MOTION FOR REARGUMENT.

MOULTON, C. J. In support of his motion for reargument the defendant seeks to distinguish the decisions in *Harris* v. *Haynes,* 34 Vt 220, and *Sweetzer* v. *Jones,* 35 Vt 317, 82 Am Dec 639, on the ground that in those cases the steam engines involved received their activating force from boilers permanently installed upon the premises, and that therefore in each instance the engine and boiler must have been regarded as a single unit, whereas here the energy required to operate the electric motors came from an outside source. This contention was not made on the former argument, and so is not now available. *Ryan* v. *Orient Ins. Co.,* 96 Vt 291, 305, 119 A 423; *In Re Moxley's Will,* 103 Vt 100, 116, 152 A 713; *Shea* v. *Pillette,* 108 Vt 446, 454, 189 A 154, 109 ALR 933. Moreover, we do not regard it as at all determinative of the issue whether the motors were fixtures.

It is also urged that our decision creates uncertainty in the law and should be reconsidered, because present day business requires that machinery should be treated as personal property, as far as possible. As to this it is only necessary again to refer to the weight of modern authority, cited in the opinion, which we regard as sound and as removing uncertainty rather than as creating it.

It serves no purpose separately to notice all the numerous other grounds upon which a reargument is sought. The issues presented in the cause were decided after due consideration, in

view of the full and able argument of counsel at the original hearing. No reason for granting a reargument is made to appear. *State* v. *Stacey,* 104 Vt 379, 411, 160 A 257, 747; *McAllister* v. *Benjamin,* 96 Vt 475, 500, 121 A 263; *Ryan* v. *Orient Ins. Co., supra; Spaulding* v. *Mutual Life Ins. Co.,* 94 Vt 42, 52, 109 A 22; *Guilment's Admr.* v. *C. V. Ry. Co.,* 82 Vt 266, 268, 73 A 580.

*Motion for reargument denied. Let fully entry go down.*