## Sherburne Corporation et al v. Town of Sherburne

[ 207 A.2d 125 ]

December Term, 1964

Present: Holden, C. J., Shangraw, Barney, Smith and Keyser, JJ.

Opinion Filed February 2, 1965

*Ryan, Smith & Carbine* for plaintiff.

*Charles E. Gibson, Jr.,* Attorney General, for State.

*O'Neill, Delany & Valente* for defendant.

**Barney, J.** On the slopes of Mt. Killington, on forest land owned by the State of Vermont, private capital has developed an extensive ski area and winter sports facility. This investment has been actively

encouraged by the State to add to the economic growth of the area, and of Vermont generally. The developer, a Vermont corporation, is before this Court as plaintiff in a declaratory judgment action, to determine whether or not the ski lift installations and associated structures are properly taxable to it. The lower court confirmed the right of the defendant town to levy the tax assessed, by finding these facilities personalty, and therefore the property of the plaintiff. The assessment of taxes on other property has not been questioned.

The State has intervened in this action. The land involved in the operation has been leased to the plaintiff by the Department of Forests and Parks, acting for the State. That lease provides that the lifts be deemed real estate upon erection, and, further, that the lifts stay behind as the property of the State if the State terminates the lease at the end of any term, or if the plaintiff, by breach of covenant, gives the State the right to immediately terminate the lease. In such instances the State is then bound to pay to the plaintiff an agreed-upon, adjusted valuation of the lift installation as an approximate recompense for originally purchasing and putting in the lifts. The State's concern in this litigation is to protect its property interest in the lift equipment. The plaintiff argues that this interest of the State in these facilities makes them tax exempt. As to their taxability, the State takes no position.

By statute, the State has authorized taxation by towns of state forest reserves and parks at the local rate, but limited the valuation to the land alone, and that to be valued at a present rate not to exceed three dollars an acre. 32 V.S.A. §3614; 32 V.S.A. §3656. Without special taxing authority, state-owned property is completely exempt from taxation. 32 V.S.A. §3802(1). It is, of course, within the power of the State, by appropriate legislative action, to grant or withhold from its municipalities the power to tax any state property. See *In re Estate of Taft,* 110 Vt. 266, 273, 4 A.2d 634; *In re Downer's Estate,* 101 Vt. 167, 175, 142 Atl. 78.

On this account, the consequential tax return to the defendant town will vary considerably, according to the ownership of the property involved. This is not usually the case. In the ordinary situation it is of no concern to the town which of two citizens is liable for taxes, or whether the responsibility is divided between them, since there is tax liability as to the property in any event. It is only when one

of the possible owners has tax exempt status that the municipality becomes concerned over the allocation of ownership.

It is likely the very infrequency of such a problem that gives rise to the argument that the defendant town had some standing to participate, as a party, in the property arrangements between the plaintiff and the State. A moment's reflection will reveal that this is not so. Decisions between mortgagor and mortgagee, lessor and lessee, grantor and grantee, and the like, are invariably consummated without consultation with the towns in terms of its tax interest. The decisions are made, and tax consequences follow.

However, the community is not helplessly bound by all such decisions. The obligation to pay a justly-owed tax cannot be avoided by artificial arrangements and claims of title that are not supported by the substance of the transaction between the parties concerned. On the other hand, the taxing authority may certainly adopt the parties' own description of the state of the title to property, even though it be lacking in full substance, if it is to the advantage of that authority. Since the parties are responsible for their own description of the property relationship between them, they cannot be heard to complain if public authorities take them at their word. But, in the ordinary case, the result will be based upon what the actual arrangement of the parties discloses about the accession or non-accession of the objects involved to the real estate.

The resolution of this case depends upon the classification of the lift facilities as either real property or personal property. This decision is necessarily preemptory, because the facilities are perhaps truly neither, or a little of both. The requirements of such classification has presented such an acute problem in the law, that a special sub-grouping has accumulated its own identity as a device to determine which side of the arbitrary boundary between chattels and real estate the nature of a given object places it. This is the law of fixtures. Fixtures are usually classed as real estate; trade fixtures, an exception to the rule, are usually classed as personal property. *Dickerman* v. *Town of Pittsford,* 116 Vt. 563, 565, 80 A.2d 529.

When a scheme of classification is used to serve more than one purpose, internal conflicts frequently develop. The object of classification is to define categories so that like objects invariably fall into the same class. But "likeness" may vary as the purpose for classifi-

cation varies. See *In re Willey*, 120 Vt. 359, 362-3, 140 A.2d 11; *Standard Oil Co. of New York* v. *Dolgin*, 95 Vt. 414, 415, 115 Atl. 235. The incentive to class an object as either real estate or chattel for tax purposes may call for a result contrary to that arrived at when done in the context of a bailment.

However, in *First National Bank* v. *Nativi*, 115 Vt. 15, 20, 49 A.2d 760 certain tests for resolving the classification of things as real or personal property have been set out as general rules: (1) the annexation, actual or constructive, of the article to the real estate; (2) its adaptation to the use of the realty to which it is annexed; and (3) whether or not the annexation has been made with the intention to make it a permanent accession to the freehold. By applying these tests in the first instance, we can decide what the character of the property at issue is under the law generally, without the pressures brought to that determination by possible tax consequences or the identity of the parties.

The characteristics of the lift installations appear from the findings. The lifts, including towers, cables, chairs, railings and platforms, are integrated devices for providing uphill transportation. Each one is a substantial structure, the longest lift being 6,300 feet long. The towers are designed according to the topography of the line of the particular lift, and each tower is embedded in a heavy cement base. They cannot be removed without permanent damage to the real estate. Over half of the cost of the lifts was for installation, amounting, in one case, to more than $120,000. These lifts could not be moved without a loss of a substantial portion of the installation investment. The buildings associated with the lifts are uniquely adapted to the land upon which they are located, are set upon heavy cement foundations and also cannot be moved without substantial damage to the real estate.

■ From the established facts already stated, annexation to the real estate and adaptation to the use of the real estate to which the property is annexed are amply evidenced. This satisfies the first two criteria previously set out. The remaining issue concerns intention to make the property a part of the real estate. This is crucial, since if the intention to make it a permanent accession is doubtful, it remains a chattel. *First National Bank* v. *Nativi*, supra, 115 Vt. 15, 21, 49 A.2d 760.

It is also clear from the findings that these lifts are items used in the trade or business conducted on the premises by the lessee. This is a characteristic typical of trade fixtures, which retain the nature of chattels, and may be removed at the end of a lease. As such, they are an exception to the rule pertaining to fixtures generally. *Snow* v. *Smith,* 86 Vt. 58, 60, 83 Atl. 269.

However, when we use this sort of test to arrive at an article's classification, we are ascertaining the intention of the parties by inference. *Dickerman* v. *Town of Pittsford,* supra, 116 Vt. 563, 567-8, 80 A.2d 529. Declarations in the documents representing the transaction may be useful to shed light on equivocal situations, or to directly contradict inferred intentions.

Here we have a lease. The plaintiff lays great emphasis on the provision which states that the lift facilities shall be deemed to be real estate and the property of the State upon erection. The defendant, on the other hand, stresses the provisions that require the State to pay for the lifts in the future. From this the defendant argues that the provision "deeming" the facilities real estate is without real substance and a mere tax evasion device.

A reading of the lease does not bear out the defendant's view. The statement that the lift facilities be deemed real estate on construction is reinforced by the balance of the lease. The basic ingredient necessary to make such property trade fixtures is a right to remove them at the expiration of the lease. *Dickerman* v. *Town of Pittsford,* supra, 116 Vt. 563, 565, 80 A.2d 529. The entire contemplation of this lease is that the lifts cannot be removed by the lessee in any event.

There are two provisions providing for compensation of the lessee upon termination of the lease in particular fashions. The State has the option to end the lease in two situations. One is, upon due notice, at the close of any term. The other arises if the plaintiff fails to comply with certain covenant requiring operation of the ski lifts for a certain minimum period. Should the State elect to exercise its right under either of these provisions, it is bound to reimburse the plaintiff for its investment in the facilities according to an agreed payment plan.

But the facilities always remain on the land, and continue to be the property of the State. Should the lease terminate in any

other fashion, there is no provision for payment to the plaintiff, but neither is there any right in the plaintiff to remove the lifts. Between the parties, the lifts are irrevocably fixed to the land. The facts confirm the intention expressed by the parties to the lease. This removes the lifts from the class of personalty, and makes them part and parcel of the real estate. *In re Willey,* supra, 120 Vt. 359, 363-5, 140 A.2d 11. Annexation could hardly be more complete. This determination is unaffected by the fact that the State is a party to the lease.

The judgment of the lower court is based upon a finding that this property is personalty. This finding cannot stand. The matter must be referred back to that court for the preparation of a new decree based on a finding that the lift facilities in question are real estate, and are the property of the State of Vermont.

*Judgment reversed, and cause remanded for the preparation of a new decree in accordance with the views expressed in the opinion.*

**Smith, J.,** dissenting. The majority opinion correctly states that the resolution of this case depends upon the classification of the lift facilities as either real property or personal property, complicated by the fact that "the facilities are perhaps truly neither, or a little of both."

The majority then sets forth three tests for resolving the classification of things as real and personal property: (1) the annexation, actual or constructive, of the article to the real estate; (2) its adaptation to the use of the realty to which it is annexed; and (3) whether or not the annexation has been made with the intention to make it a permanent accession to the freehold.

The majority holds that the first two criteria above set forth are amply evidenced by the fact that the towers which support the lifts are designed according to the topography of the line of each particular lift, and each such tower is embedded in a cement base. In my view, such facts are not enough for a determination that the lifts and their accessories have been so annexed to the realty that they have become part of it.

As the majority opinion states, "the lifts, including towers, cables, chairs, railings and platforms are integrated devices for providing uphill transportation." While, of necessity, the ski lifts must necessarily follow the contours of the mountainous land upon which they are placed, the purpose of such lifts is to move ski enthusiasts quickly

and without physical effort on their part to elevations from which they can enjoy the excitement of the downhill run. The plaintiff corporation is in the business of selling the privilege of skiing upon the land leased by it to the general public. The erecting of the lifts and its accessory parts and structures has been done by the plaintiff corporation to further the desire of the public to use its particular ski area, in preference, perhaps, to other such areas, and thus to advance the business of the plaintiff corporation.

This Court was confronted with the problem of whether buildings and machinery placed upon rented premises should be treated as part of the realty, or as trade fixtures and personal property, in *Snow* v. *Smith et al,* 86 Vt. 58, 83 Atl. 269.

Speaking for the Court, the late Chief Justice Powers set forth the following test for such determination:

"The general principle involved in a determination of such questions is the distinction between the business which is carried on in or upon the premises and the premises themselves. That the former is personal in its nature, and articles that are merely accessory to the business and have been put on the premises for this purpose, retain the personal character of the principal, to which they are subservient. But articles which have been annexed to the premises as accessory to the land, without regard to the business there carried on, become subservient to the realty, and acquire its character.

The opinion then states:

". . . the size, quality and character of a building, and the manner in which it is attached to the realty are of little or no consequence, except as evidence bearing upon the purpose of its erection." *Snow* v. *Smith et al,* supra, pp. 60-61.

It is abundantly clear in the present case that the installations here were for the purpose of advancing the business of the plaintiff corporation, and were not annexed to the leased premises without regard to such business. I must, therefore, regretfully dissent from the majority view that such installations were part of the realty. I would hold them to be trade fixtures and would affirm the judgment rendered below.